### RUSSIAN GOVERNMENT v. LEHIGH VALLEY R. CO.

(District Court, S. D. New York. October 2, 1923.)

1. **Ambassadors and consuls ⬅➡8—Ambassador held to have capacity to commence action though government fallen.**

    The ambassador of the "provisional Russian government" had the capacity to commence actions for that government against a railroad for damages, even though the government may then have fallen, where at the time of such commencement he was the accredited ambassador to the United States, which recognized the government he represented.

2. **Abatement and revival ⬅➡45—Action by ambassador of fallen government held not to abate on his retirement.**

    Where an ambassador of the "provisional Russian government" commenced action after that government had fallen, but while he was its accredited ambassador, and on his retirement the United States government considered that the property for which he was responsible vested in another representative of the Russian government, whose diplomatic status was not considered to be altered, the action did not abate.

At Law. Two actions by the Russian Government against the Lehigh Valley Railroad Company. On motions by defendant and plaintiff. Granted in part, and in part denied.

Coudert Bros., of New York City (Frederic R. Coudert and Mahlon B. Doing, both of New York City, of counsel), for plaintiff.

Hornblower, Miller & Garrison, of New York City (Lindley M. Garrison and Charles A. Boston, both of New York City, of counsel), for defendant.

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

GODDARD, District Judge. The cases are now before this court upon the separate trial of the issues, under stipulations and orders filed in accordance with Rev. St. U. S. § 649 (Comp. St. § 1587). These issues are as to the capacity of the plaintiff to bring and now to prosecute the suits. In addition, the defendant makes several motions, all having for their object the dismissal of the suits, upon the claimed incapacity of the plaintiff to commence them or to proceed with them. The defendant maintains that no cause of action can be enforced under existing conditions, because the only existing government of Russia is not recognized by the United States, and is therefore not entitled to any standing in this court.

[1] The suits were commenced July 23, 1918, to recover $1,675,-042.47, damages for loss of property on July 29, 1916, owned by the then Imperial Russian government, and in the possession of the railroad company. The goods were destroyed in an explosion. The bill of lading under which the goods were shipped restricted the right to sue to two years. The ambassador of the "provisional Russian government" had the capacity to commence the actions, even though that government may then have fallen, for he was at this time, and continued to be until June 30, 1922, the accredited ambassador of that government, which recognized the government he represented.

As Mayer, C. J., stated in an opinion on another motion in this same litigation (293 Fed. 133), which involved a similar principle:

"That the court is bound by the recognition of the political branch of its own government, and can and should look no further, is a proposition so well settled, and so well grounded in common sense and in the necessities of orderly procedure, that further discussion is unnecessary. Canadian Car Co. v. American Can Co., 253 Fed. 152."

And quoting further from his opinion:

"That a foreign government may sue in our courts is elementary. That its ambassador on its behalf has authority to instruct that suit shall be begun seems one of the simplest incidents of the ambassadorial office. Such authority has nowhere been doubted as matter of law, and it has long since become effective by practical construction in addition to other reasons."

The following official correspondence with the Secretary of State brings up the main questions now for consideration:

"February 17, 1923.
"Hon. Charles E. Hughes, Secretary of State, Washington, D. C.—My Dear Mr. Secretary: I am asking my partner, Mr. Raoul E. Desvernine, to present this letter and secure, if he can, such answers as you deem proper to make to the following questions:
"(1) What is the present government of Russia, and its name?
"(2) Has such government been recognized by the United States?
"(3) What is the extent and nature of such recognition?
"If, through ignorance of the proper procedure, I have not asked the appropriate questions, what I am after is to ascertain whether there is any government in Russia to-day which the United States government has recognized. My reason for asking these questions is that I am defending a case brought by the Russian government against the Lehigh Valley Railroad Company, which is set for trial on Tuesday, and I understand that for the solution of questions of this kind the courts look to the Department of State for information.
"Sincerely yours,                                    Lindley M. Garrison."

The response:

"Department of State, Washington,

"February 19, 1923.

"My Dear Judge Garrison: In reply to the inquiry contained in your letter of February 17, 1923, and to certain additional inquiries made orally to-day by your partner, Mr. Raoul E. Desvernine, I have to inform you that the so-called provisional government of Russia, which succeeded to authority upon the abdication of the Czar, was recognized by the government of the United States on March 22, 1917. On July 5 of the same year Mr. Boris Bakhmetieff was received by the President as the ambassador extraordinary and plenipotentiary of the newly recognized government.

"Mr. Bakhmetieff continued to be recognized as the ambassador of Russia to the United States until June 30, 1922. The custody of the property of the Russian government in this country, for which Mr. Bakhmetieff had been responsible, was, after the date of his retirement, considered to vest in Mr. Serge Ughet, the financial attaché of the Russian embassy, whose diplomatic status with this government was not considered to be altered by the termination of the ambassador's duties.

"In answer specifically to your questions, I may say that the United States has not recognized any other government in Russia since the fall of the provisional government, to which reference is made above.

"The régime now functioning in Russia, and known as the " 'Soviet Régime,' has not been recognized by the United States.

"Sincerely yours,        Charles E. Hughes.
"Hon. Lindley M. Garrison, No. 24 Broad Street, New York City."

[2] Does the fact that the government to which Mr. Bakhmetieff was accredited has fallen, and that no other government in Russia has been recognized by the United States, cause these actions to be abated? Or does the fact that the custody of the property for which Mr. Bakhmetieff has been responsible was considered by our government to vest in 'Mr. Ughet, whose diplomatic status was not considered to be altered, save them? That the real party in interest is the state of Russia, and that Russia, the state, still lives and is a continuing entity in the contemplation of the law, is true. In The Sapphire Case, 11 Wall. 164, 20 L. Ed. 127, Mr. Justice Bradley says:

"The next question is whether the suit has become abated by the recent deposition of the Emperor Napoleon. We think it has not. The reigning sovereign represents the national sovereignty, and that sovereignty is continuous and perpetual, residing in the proper successors of the sovereign for the time being. Napoleon was the owner of the Euryale, not as an individual, but as sovereign of France. This is substantially averred in the libel. On his deposition the sovereignty does not change, but merely the person or persons in whom it resides. The foreign state is the true and real owner of its public vessels of war. The reigning emperor, or national assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. A change in such representative works no change in the national sovereignty or its rights. The next successor recognized by our government is competent to carry on a suit already commenced and receive the fruits of it. A deed to or treaty with a sovereign as such inures to his successors in the government of the country. If a substitution of names is necessary or proper, it is a formal matter, and can be made by the court under its general power to preserve due symmetry in its forms of proceeding. No allegation has been made that any change in the real and substantial ownership of the Euryale has occurred by the recent devolution of the sovereign power. The vessel has always belonged and still belongs to the French nation."

The importance of recognizing governmental continuity, irrespective of considerations as to the existing form of a foreign government, or as to the human beings in control at any particular time, is mentioned in many of the cases and text-books.

The question suggesting itself is: How can Mr. Ughet represent a government which has fallen? The answer is that the provisional government had fallen when Mr. Bakhmetieff began the suits, and they are held to have been properly begun, for the reason that at the time our government recognized him as such ambassador, and the court is bound by the action of our government, and so, regardless as to whether or not that government may have fallen, if our government considers this "financial attaché of the Russian embassy, whose diplomatic status with this government was not considered to be altered," to have become vested with the custody of the property of the Russian government after Mr. Bakhmetieff's retirement, I think that it is conclusive with the court, and that in this capacity the plaintiff may prosecute these suits. No precedent for such a situation has been presented to me, and I have not been able to find one. I feel, however, that our government may have adopted this plan for the purpose of preventing what otherwise would have been a loss of rights to Russia, because of its refusal to recognize the present régime now functioning in Russia, and I come more readily to the conclusion that I do, for I realize how highly important it is that the rights of Russia shall not be lost in this manner.

. The motion to amend the complaints, to entitle the plaintiff "the State of Russia" is granted. This is in accordance with the opinion of Mack, Circuit Judge, upon a motion in this litigation, and also consistent with Mr. Justice Bradley's opinion in The Sapphire Case, supra.

The defendant's motions to dismiss these actions, to have them declared abated, and for judgment on the pleadings, together with its motions for judgment upon the separate issues, are denied.

The plaintiff's motions for judgment upon the separate issues now on trial are granted, with costs.

The motions to supplement the record nunc pro tunc are granted— at the request of the defendant:

"That at the close of the trial the defendant renewed all of its motions made at the opening, that the court indicate its action and allow appropriate exceptions, and that (if the motions are not granted in that form) the defendant thereupon moved for a verdict upon the issues on trial, in its favor, and that the court take similar action as to any then proper exceptions, and that this suggestion be made part of the record of the trial as recorded in the minutes, all without prejudice to any and all exceptions reserved by either party on the trial."

At the request of the plaintiff:

"To note our motions made at the end of the trial for a denial of defendant's motions, and for judgment in favor of plaintiff upon the issues now on trial, and to note our exception to any adverse ruling of the court upon any of our motions, all without prejudice to any of the exceptions urged by either party upon the trial."